Filed 3/16/21  P. v. Starrett CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NICOLAS JAMES STARRETT,<br><br>Defendant and Appellant. | H045233<br>(Santa Clara County<br>Super. Ct. Nos. C1243626, C1364474,<br>C1485757, C1517367, C1522978,<br>C1648684, C1651867, C1758858) |

Appellant Nicolas Starrett was found incompetent to stand trial (IST) and committed to the California Department of State Hospitals (DSH) for competency restoration treatment.  There was a significant delay in Starrett's transportation for treatment, and he was eventually transferred to a jail-based competency treatment (JBCT) facility.  Starrett contends that the superior court erred by failing to ensure that he was timely transferred for treatment, by not imposing sanctions against DSH for the delay in his treatment, and by misconstruing recent amendments to Penal Code section 1370.[1]  We find the appeal moot as to the arguments concerning the timeliness of the transfer for treatment and the trial court's interpretation of amendments to section 1370.  We find no merit to Starrett's contention regarding the denial of sanctions.  We therefore affirm the June 2017 commitment order.

---

[1] Undesignated statutory references are to the Penal Code unless otherwise noted.

## I. BACKGROUND

In December 2016, during the course of a felony proceeding, defense counsel declared a doubt as to Starrett's competency to stand trial. On April 17, 2017, the trial court issued an order of commitment (§ 1370, subd. (a)(2)), which ordered Starrett committed to DSH for competency restoration treatment. The trial court ordered that Starrett be transported "by 5:00 p.m. May 5, 2017 to a placement to be named by the [DSH]."

Starrett was not transferred for treatment at a DSH facility by the May 5, 2017 deadline. His attorney thereafter filed a motion contending that because of the delay Starrett was now being unlawfully confined. He requested that the trial court issue an order for DSH to accept Starrett for placement within seven days or release Starrett from custody. The court issued an order to show cause (OSC) to DSH to explain why sanctions should not be imposed for failing to timely place Starrett in a mental health treatment program. DSH filed a response in which it claimed that it received inadequate notice of the request for sanctions, and in any case, the delay in Starrett's placement was due to his own objection to placement in a JBCT facility.

DSH requested that Starrett be screened for admission into a JBCT facility. On May 12, 2017, the trial court granted DSH's request. On June 12, 2017, Starrett was accepted into the San Bernardino JBCT program for treatment.

Starting on June 23, 2017, the trial court conducted a contested placement hearing on Starrett's suitability for placement at the JBCT facility.[2] Starrett's counsel opposed

---

[2] The hearing involved a total of 17 IST defendants at various stages of the commitment process. The defendants were grouped into two classes. The first class of six defendants, which included Starrett, had already been committed to DSH for treatment but were subsequently accepted into the San Bernardino JBCT program over the objection of their counsel. The remaining 11 defendants had not yet been committed to DSH but were contesting a placement recommendation that included the JBCT program.

placement in the San Bernardino JBCT program. The trial court stated that its purpose in conducting the hearing was to determine whether the San Bernardino JBCT program was "appropriate" because "[i]f it is, there's no OSC . . . [i]f it's not, then we'll talk about OSCs."

The hearing concluded on June 27, 2017. After the hearing, the court ruled that the San Bernardino JBCT program was appropriate for competency treatment. The court specifically found that the treatment provided at the San Bernardino JBCT facility was comparable to the treatment provided at a traditional DSH facility. While the court acknowledged that "[t]he county jail is a bad place for an IST defendant to be . . . because [it] lacks . . . the broad spectrum of care of a [DSH] program," the court found that "JBCT is a competent program," and "that it is not cause for an OSC against the [DSH]." The court thus amended, nunc pro tunc, its prior order requiring that Starrett be admitted to a DSH facility for restoration of competency, and instead ordered that DSH admit Starrett to the San Bernardino JBCT program (the June 2017 commitment order).

At times during the hearing, the court questioned whether it even had "the authority to tell [DSH] what to do" under the statute.[3] DSH's counsel acknowledged that the statute "could have been written clearer. . . ." DSH's counsel noted that there was a pending bill, Assembly Bill No. 103, that would clarify that placement in a JBCT program rests "completely in DSH's discretion . . . so that this court does not have to be involved." DSH's counsel stated that based on his best information, the bill was "on Governor Brown's desk" awaiting approval. Starrett's counsel stated "[i]t's my understanding that it passed," and he noted that there was some opposition to the bill from those who "had a position that the judges should be the ones who retain the power and placement under [section] 1370."

---

[3] Although the court apparently did not believe it had authority to direct placement, in finding the JBCT program to be suitable for Starrett and similarly situated IST defendants, the court assumed it did have authority to direct placement.

Starrett was admitted to the San Bernardino JBCT facility on July 6, 2017. On August 1, 2017, Starrett filed a notice of appeal from the commitment order. On August 9, 2017, Starrett completed his treatment and was declared competent to stand trial, and his criminal proceedings were resolved.

In July 2018, the Attorney General filed a motion to dismiss Starrett's appeal, alleging the appeal was untimely, moot, and taken from a nonappealable order. After receiving Starrett's opposition to the motion, this court concluded that the June 27, 2017 order is appealable, and that Starrett timely filed his appeal. (Code Civ. Proc., § 904.1, subd. (a)(2); *People v. Christiana* (2010) 190 Cal.App.4th 1040, 1046.) We deferred ruling on the following questions for consideration with the merits of the appeal: ". . .whether the June 27, 2017 order includes an order denying a request for sanctions; whether such an order, if it exists, is appealable; and whether the court should exercise its discretion to review the appeal in spite of alleged mootness."

## II. DISCUSSION

Starrett makes three contentions on appeal. First, he contends that the trial court abused its discretion when it failed to ensure that he was transported for competency treatment within a reasonable amount of time. Second, he contends that the trial court abused its discretion by failing to sanction DSH for its delay in securing treatment. Third, Starrett asserts that the trial court wrongly construed its authority under recent amendments to section 1370. We will first address the issue of mootness, as raised by the Attorney General in both the motion to dismiss, and in the respondent's brief on appeal.

### A. *Mootness*

Starrett concedes that his appeal is moot because this court cannot provide him the requested relief. He asks this court to exercise its discretion to review the issues, despite being moot, contending he raises issues of public importance that are likely to recur and to escape review.

4

As a general rule, " ' "the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.) Thus, an " 'action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events.' " (*Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 866.) Put another way, " '[a]n appeal should be dismissed as moot when the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief.' " (*Brown v. California Unemployment Ins. Appeals Bd.* (2018) 20 Cal.App.5th 1107, 1116, fn. 6.) An exception to the general rule of mootness is that "if a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." (*In re William M.* (1970) 3 Cal.3d 16, 23.)

Here, Starrett acknowledges that subsequent to the June 2017 commitment order, he was admitted to the San Bernardino JBCT, he was restored to competency, he was returned to Santa Clara County, and all pending criminal charges were resolved. Under these circumstances, this court is powerless to grant any effective relief; any ruling on the propriety of the June 2017 commitment order or the trial court's application of section 1370 would have no practical effect on Starrett. Thus, Starrett's challenge to the commitment order is moot.

We decline to exercise our inherent discretion to review the matter. The timely transfer of IST defendants for competency treatment, and the proper application of the relevant statutes, are issues of broad public interest. However, under the circumstances of this case, we cannot say that the alleged problems are likely to recur and evade review.

5

Prior to the last day of the hearing, section 1370, subdivision (a)(1)(B)(i) provided that "the court shall order that the mentally incompetent defendant be delivered by the sheriff to a state hospital for the care and treatment of the mentally disordered, as directed by the State Department of State Hospitals, or to any other available public or private treatment facility, *including a county jail treatment facility*." (Italics added.) Effective June 27, 2017, Assembly Bill No. 103 amended section 1370 to provide that "the court shall order that the mentally incompetent defendant be delivered by the sheriff to a State Department of State Hospitals facility, as defined in Section 4100 of the Welfare and Institutions Code, for the care and treatment of the mentally disordered, *as directed by the State Department of State Hospitals . . . .*" (Stats. 2017, ch. 17, § 30, italics added.) Assembly Bill No. 103 also amended Welfare and Institutions Code section 4100 to now provide that JBCT facilities under contract with DSH are recognized as under the jurisdiction of DSH. (Stats. 2017, ch. 17, § 61.)

In this case, the trial court applied and analyzed the prior version of section 1370.[4] Given the changes to section 1370, it is not clear that issues involving the trial court's application of the prior version of section 1370 are likely to recur. Further, because the trial court's commitment decision involved application of the prior version of section 1370, we decline Starrett's invitation to construe amended section 1370 in the first instance. Should application of the current version of section 1370 continue to result in unreasonable delays in the transfer of IST defendants for competency treatment, those delays can be addressed in appropriate judicial proceedings. We conclude there is no

---

[4] In his brief, Starrett contends that the trial court actually applied amended section 1370. This is not accurate. Although the amendments to section 1370 became effective on the last day of the hearing, it is clear from the transcript that the parties and the trial court were unaware of this fact, and so the trial court proceeded to apply the now-repealed version of section 1370. The parties raise no issue with this apparent oversight and thus we do not consider it in this appeal.

justiciable controversy concerning the propriety of the June 2017 commitment order in this matter, and no exception to the mootness rule is implicated here.

## B. Discharge of OSC

Although Starrett's contentions regarding the propriety of the commitment order are moot, his contentions concerning the trial court's failure to sanction DSH for its delay in securing treatment are not. If this court determines the trial court did abuse its discretion in failing to order sanctions, Starrett could obtain effective relief.

Starrett contends that the trial court abused its discretion when it discharged the OSC without sanctioning DSH. He argues that his request that the court impose monetary sanctions, which was authorized under Code of Civil Procedure 177.5, "provided the [trial court] the vehicle to curtail DSH's delay in transporting IST defendants" like Starrett, in violation of the court's order to do so. He asserts that to not "impose sanctions under the circumstances here was irrational and an unreasonable abuse of discretion." The Attorney General argues that the denial of a request for sanctions is a non-appealable issue, and in any case, the court did not abuse its discretion. We need not decide, however, whether the ruling is subject to review because, as we explain, the trial court plainly did not abuse its discretion.

Code of Civil Procedure section 177.5 authorizes the imposition of reasonable monetary sanctions up to $1,500, payable to the court, "for any violation of a lawful court order by a person, done without good cause or substantial justification." "The 'imposition of sanctions, monetary or otherwise, is within the discretion of the trial court. That discretion must be exercised in a reasonable manner with one of the statutorily authorized purposes in mind and must be guided by existing legal standards as adapted to current circumstances.' [Citations.] 'When the question on appeal is whether the trial court has abused its discretion, the showing is insufficient if it presents facts which merely afford an opportunity for a difference of opinion. An appellate tribunal is not authorized to substitute its judgment for that of the trial judge. [Citation.] A trial court's

7

exercise of discretion will not be disturbed unless it appears that the resulting injury is sufficiently grave to manifest a miscarriage of justice. [Citation.] In other words, discretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered.' [Citation.]" (*In re Woodham* (2001) 95 Cal.App.4th 438, 443 (*Woodham*).)

At the hearing, the trial court impliedly found that sanctions under section 177.5 were not warranted and that the OSC should be discharged.[5] While there was certainly a significant delay in Starrett's placement for treatment, the trial court could reasonably have found that the imposition of sanctions was unnecessary to ensure compliance with the court's order. As the trial court observed, there are long waitlists for treatment at DSH hospitals, and even JBCT treatment facilities were in high demand. After issuance of the OSC, hearings took place to determine the suitability of the San Bernardino JBCT facility. After the trial court found the San Bernardino JBCT facility to be a reasonable treatment option, Starrett was thereafter transferred for competency treatment.

While the trial court certainly *could* have imposed sanctions under Code of Civil Procedure section 177.5 (e.g., *People v. Hooper* (2019) 40 Cal.App.5th 685, 692-694 [no error in sanctioning DSH under section 177.5]; *People v. Kareem A.* (2020) 46 Cal.App.5th 58, 78-80 [no error in sanctioning DSH under section 177.5, and no good cause or substantial justification to excuse delay]), it was *not required* to sanction DSH. The mere fact that other courts have come to different conclusions under comparable circumstances does not make the trial court's decision in this case an abuse of discretion. On this record, the trial court could reasonably have concluded that any further sanctions

---

[5] The court did not explicitly rule on Starrett's request that the trial court issue an order for DSH to accept Starrett for placement within seven days or suffer court-ordered sanctions. Nor did the court explicitly state it was discharging the OSC it issued asking DSH to explain why sanctions should not be imposed for failing to timely place Starrett in a mental health treatment program. Rather, the court determined that "JBCT is a competent program and that it is not cause for an OSC against the [DSH]."

8

were unnecessary given DSH's apparent efforts to comply with the court's order. Because the trial court's exercise of discretion did not " 'exceed[] the bounds of reason,' " we decline to find error. (*Woodham*, *supra*, 95 Cal.App.4th at p. 443.)

## III.  DISPOSITION

The June 2017 commitment order is affirmed.

_____
Greenwood, P.J.

WE CONCUR:


_____
 Elia, J.










_____
 Grover, J.






People v. Starrett
No. H045233